Case number 10-0341, Deon J., a minor. Counsel, please approach. Good morning, Your Honors. My name is Deborah Nall. I'm here on behalf of the defendant, Deon J. Good morning, Your Honors. Charles Prochaska, P-R-O-C-H-A-S-K-A, on behalf of the people. Okay. Fifteen minutes per side saves some time for rebuttal. Good morning, Your Honors. May I please the court? My name is Deborah Nall from the Office of the State Appellate Defender, on behalf of the appellant, Deon J. Today I plan to discuss the Fourth Amendment issues raised in my first argument, and unless this court has any questions about the remaining arguments, I'll stand on my briefs. This case involves an unreliable tip that was uncorroborated and a search that went outside the scope of what's permitted under Terry v. Ohio. The facts are uncontested. Deon was walking out of an apartment building, talking with his friend, Julissa, when three Chicago police officers stopped their car, got out of the car, ordered Deon and Julissa to go up against the wall, hands against the wall. The officers stopped Deon and Julissa based on nothing except a tip, a tip that a black woman in an orange jacket had been involved in a stabbing in a domestic dispute. Julissa was a black woman. She was wearing an orange jacket. Deon didn't look like anyone the police were searching for. But the officers searched both Deon and Julissa because they believed that one of them had been involved in the stabbing. So one officer searched Deon while the other officers searched Julissa. They didn't find anything. But still believing that one of them had the knife that had been used, they switched and the other officers searched Deon again. On the second search, he found a gun. But there's no record that a knife was ever found. Based on this record, the trial court should have granted Deon's motion to suppress. First, the state did not establish reasonable suspicion to justify stopping and searching Deon where there's no information about the call or corroboration of illegal activity. Second, even if the initial stop was valid, the second search went beyond what was necessary to determine whether Deon was armed. Officers may act on information provided by a third party, but only if the information is reliable and allows an officer to reasonably infer that a person was involved in criminal activity. And here, there's no information at all about whether that tip was reliable. It's precisely like the United States Supreme Court's decision in Florida v. J.L. We have a call. We don't know anything at all about the call. And so it's an anonymous tip. And secondly, the officers didn't corroborate there was any illegal activity. All they corroborated is the innocent fact that there was a black woman in an orange jacket. That's not illegal. There were no signs that anyone had been involved in a knifing. There was no suspicious activity whatsoever. Deon and Jalissa were up against a wall. They weren't a threat. So the officers then searched them. And there was no basis at all for the search. If there is a basis for them to stop and search the female, wouldn't there be a transferable right for them to search who's with her in case there's a weapon involved? No, Your Honor, there would not be, particularly under the circumstances of this case, where Deon, A, didn't look like anyone they were searching for, and B, was not doing anything suspicious. But if he was with the person that they were searching for, a black woman in an orange jacket in that area, for public safety purposes, wouldn't the police be justified in searching him as well? I don't think so, Your Honor. They were walking out of an apartment building. The record doesn't indicate the size of the apartment building, but from just common sense, many people live in apartment buildings. So there could be at least six different people living in this apartment building, and their neighbors, they could conceivably be talking to each other. Do you think a lot of people were walking out of that apartment building at that moment in time wearing an orange jacket? I think the fact that she was wearing an orange jacket can't be transferred to Deon. They were walking close together, they were talking. Would it be reasonable for the police to believe that she had transferred the weapon to him if a knife were involved, to hide it, to keep it from the police so he could destroy it or get rid of it? Under the circumstances of this case, I don't think so. They were talking to each other. There's no indication that there was any sort of upset. There's no blood. They were just talking. At least based on the record that we have in this case, there's no indication that there was any reason to suspect Deon. The officer testified that he didn't look like anyone they were looking for. He's 16 years old. He didn't look like he could be someone's husband. He wasn't identified in the tip. We have a doctrine, there's no guilt by association. You can't just assume that because two people, especially in these circumstances, are walking together out of a building that they're collaborators in some sort of criminal enterprise. They were together actually just a few moments, right? They came walking out of a building that was right at the building where the police arrived and began their process. That's correct, Your Honor. So under these circumstances, this case is exactly like Florida v. J.L., and in fact, this Court's recent decision of People v. Reinhart, where we have nothing except an unreliable tip, an anonymous tip, that's not corroborated by any assertions of illegality. And there's really two issues, isn't there? There's the stop and then there's the subsequent search. Correct. So neither of those were, I mean, in Florida v. J.L. and the analysis that follows, and here especially, I think the stop was almost incidental to the frisk. They're all one. But in addition to that initial stop and search, we then go beyond to an entirely new error, so that even if this Court found that that initial stop and search were valid, the second search completely exceeded the scope of what's permissible under Terry. The officer even testified after the first officer had searched and found nothing. The officer testified they searched Dion again because they believed he had the gun. They believed he had the gun, I mean, I'm sorry, the knife that had been used. That's investigation. There was no indication that Dion was armed and dangerous. There was no indication that he was a threat to their safety. He was, in fact, hands against the wall, as was his friend Julissa. So under, I mean, every authority that I was able to find, that's absolutely impermissible. During their testimony, the officer never indicated or never articulated any facts that led him to believe that he was in danger. It was just a general conclusion based on the nature of the call. Correct, Your Honor. I'm sorry. I mean, he did say that he believed he was in danger, but then he immediately said because he believed that they had the guns. There were no specific facts. The general nature of the call, but he wasn't able to specifically articulate facts relating to this defendant or this respondent that gave rise to his reasonable belief that he was in danger or others, right? Exactly, Your Honor. So based on the evidence in this case, the state simply did not meet its burden to show that this Terry stop and search was constitutional, and even if the initial stop and search were constitutional, the second search certainly was not. So I would like to reserve any remaining time for rebuttal, and unless this Court has any further questions, thank you. I'll ask that you reverse the normand. May it please the Court. Your Honors, the search and seizure in this case was entirely reasonable based on the totality of the circumstances and the facts that were known to the officers. Those facts included their arrival at a scene of a violent incident, a domestic stabbing just two to three minutes after that call came in, and they see a woman matching the exact description of the offender with a minor respondent exiting the exact address where that violent incident had just occurred. A third officer, when they arrive, goes into the building to actually corroborate that call to see what was going on, and the officers feared for their safety, not for a general reason, but for the specific and credible reason that they believed minor respondent was concealing the knife that was used in the stabbing because they did not see a bulge on the offender's pockets or waistband. What was the basis for that belief? The testimony from Officer Rodriguez, Your Honor, was that he did not see a bulge on the suspect, the African-American woman wearing an orange jacket. He specifically testified that because he didn't see anything that looked like a weapon on her, he believed that she had the weapon. So it was process of elimination, that's all, because he didn't see a bulge with respect to her that he must have had? No, Your Honor, that was a specific, credible fear for officer safety. Defendant's argument is distinguishable because when courts typically find that that's an unbelievable fear for safety, it's because the reason articulated is because it was at night or because it was a high crime area or because it was an area known for drug activity. Here we actually had specific facts articulated that related to the case because they believed there was a weapon on that young man. Your Honor, I'd like to address... You're saying that the basis for that officer's belief was the fact that they didn't see a bulge in the female's clothing and the nature of the call? That's right, Your Honor, because there was a weapon that was involved in that incident. And courts are clear that... And that caused them to believe that he must have it? Yes, Your Honor, that's a reasonable belief. We have to look at it from the facts known to the officers and how would a reasonable officer act in that situation. And courts are clear that when they're responding to an incident that does involve weapons, the facts required to begin a Terry stop and frisk are lessened. In this case, that's what we had. What if she was carrying a purse? Then a search of her purse would be reasonable, too. No, we're not talking about searching her. What if she was carrying a purse? Would that justify the police officer searching her companion? Certainly, Your Honor. Why? Because, as Your Honor's pointed out during minor response argument, he was walking with her, he was talking with her, they had a reasonable belief based on those facts that he had been somehow involved in that incident. So out of articulated fear for their safety, they could absolutely search him to make sure that he wasn't armed. If the theory is that it's warranted because they don't see a bulge on the woman, but she's got a purse where anything could be in a purse, would there be any basis to believe that it's okay to search her companion? That would be a reasonable belief born out of concern for officer safety. But here we don't have those facts. We don't have a purse. And the officers acted reasonably given that they had just arrived at this scene. The temporal proximity justified their belief that one of these two people was armed. They were going to have to investigate this stabbing, and they wanted to make sure that before they did so, no one was going to pull a knife on them. That's an entirely reasonable basis to stop and search. It sounds closer to a hunch, doesn't it? No, Your Honor, not at all. It's simply not a hunch. If she's walking out of that building and there's four young people with her, do all four get searched? Sure, they could. And that would be reasonable. There's a weapon involved, a reasonable officer. If the case is distinguished, when you say weapon, there's a distinction between handguns and other types of weapons, right? Certainly. In this case it wasn't a handgun, it was a knife. No, but we had two officers searching two individuals. A knife could be a dangerous instrument given that ratio of officers to individuals. So again, Terry is all about reasonableness. The officers here did act reasonably to ensure that neither person was armed. Your Honors, I'd like to address a minor respondent's argument that there was an anonymous tip that was unreliable that formed the basis of this Terry stop and frisk. That assertion is simply unsupported by the record. That is pure conjecture. And this Court should not overturn the ruling of the trial court based upon facts that are completely absent from the record below. As the people pointed out in their brief, this is simply not the kind of case with a fact pattern that was presented in Florida v. J.L. or in any of the cases that say that where there's an anonymous tip, a truly anonymous tip involving an informant and a call of a man with a gun, that was the specific holding of Florida v. J.L. that where it's an anonymous call of a man with a gun, you need more than just that. But we don't have that here. Minor respondent had the burden at the court below to prove the illegality of this search. He chose not to concern himself with the facts of the call. Instead, he argued that based upon what they observed when they arrived, they didn't have articulable suspicion. And based on that, the trial court did rule that there was articulable suspicion. Well, he only has to make a prime location showing, then the burden shifts to the prosecution. They have that opportunity then to bring in that basis of knowledge, which could be then imputed to the responding officers under Lawson, right? Well, to clarify, Your Honor, the ultimate burden never shifts to the State. Once the defendant does make a showing that he was acting unsuspiciously, the State then does have the burden to show that the search was legal according to the totality of the circumstances. And as I mentioned, the facts of this case, the totality of circumstances were proven that there was objective facts and articulable suspicion. Minor respondent had the ultimate burden, and he never brought up anything to do with the reliability of the call. The testimony at the motion was that a call came in. This was a police dispatch. Courts are clear. Police can rely upon radio communications, including police dispatch, along with other facts to justify a Terry stop-and-frisk. Here we had the police dispatch, and then we had the corroboration of this exact suspect leaving this exact address just two to three minutes after a violent incident. This was an ongoing, possibly ongoing altercation. We know it was two to three minutes after this incident. We know it was two to three minutes after the call. That's right. That's right, two to three minutes after the call. But many of defendant's cases, minor respondent's cases, involve half hour, hour later, weeks later. In this case, two to three minutes is a very short time, and it increases the reasonableness of their actions. Other than the fact that it was a black female wearing an orange coat, was there any other facts consistent with the possibility of her having been involved in a violent assault within moments of the officers arriving there? No, the testimony was that there were no injuries apparent, and even that minor respondent clearly wasn't the husband involved in this case. But questions like that is going too deep for the purposes of Terry. That's going up to probable cause, even maybe reasonable doubt. Here, all we have to show is an articulable suspicion and reasonableness, and that was shown given the temporal proximity and the matching description. Your Honors, I'd like to address also the propriety of what minor respondent characterizes as the second search that was performed in this case. No such rule exists in Terry jurisprudence that prohibits police from patting down twice. Minnesota v. Dickerson spells out the two most important rules concerning the scope of a Terry frisk. The first one is that it must be designed to detect weapons which would protect the officers, not just to discover evidence, and secondly, that there can be no continued exploration after a determination has been made that the suspect is unarmed. In this case, neither apply. The search was calculated to discover weapons. The first one was we had testimony it was a cursive search, so it was a brief pat-down. And immediately after, we don't have a time frame, but immediately after, another officer conducts another pat-down at the waist. Isn't the first search, isn't she going into his pockets? No, Your Honor, I don't believe that was the testimony. I may be wrong. I thought that she had indicated in the testimony that she was going into his pockets. It was more intrusive than just a pat-down. I don't believe that that was the testimony, but in regards to the second search, that was a pure Terry frisk. It was at the waistline, and that's where the loaded .38 caliber revolver was recovered. All of minor respondent's cases, especially Dickerson, involve, as you mentioned, more intrusive searches into pockets. Officer feels a bulge that he should know is not a weapon and discovers a bag of drugs. Or as in the Lawson case, officer goes into the pockets and finds proceeds from the robbery. Should know that's not a weapon. Here we don't have that. Here we just have a second pat-down at the waistline calculated to discover weapons. No evidence that there was a prior determination that minor respondent was unarmed. This was absolutely within the scope of a proper Terry frisk. Based on there being no rule that a second pat-down is impermissible, because it was in the scope, this court should uphold that Terry frisk. Your Honor, based on the totality of the circumstances, again, the officers acted reasonably here in stopping and searching minor respondent, and we would ask that you affirm the trial court's denial of that motion and affirm his conviction. Thank you. Thank you, sir. I just have a few points. First of all, the burden is on the state, because in this case it's uncontested that Dion and Jalissa weren't doing anything suspicious at the time of the stop. So they met their prima facie burden, which then switches to the state to prove that there was no infringement. Second, the state did not establish that this is a police dispatch, but even if they had, some officer has to have a basis for knowledge. Here all we know is that there was a call. The state perhaps did have this information, but for whatever reason they chose not to introduce it at trial. So based on the record we have, we have no way to determine the basis of knowledge, which is equivalent to an anonymous tip. And the reason why, as Florida v. Jal pointed out, that's a problem, is because this could have just been a prank or a vendetta, someone seeking to just create an embarrassing, intrusive incident for Jalissa or Dion. So based on the record that we have, this was an anonymous tip. It's just like Jal, it's just like Reinhart. And third, regarding the second search, first, Your Honor, there was indeed a search of the pockets. I can't locate the exact record site right now, but I'm certain of that. And two, the officer himself testified that he was searching again, because even though the initial pat-down had not found any weapons, he just knew that one of them had this knife, so he was going to search again. There's no authority for the fact that, you know, you get one pat-down, she determined that there was not a problem. They were looking for a knife. A knife is not some sort of, you know, subtle thing, assuming it was a knife in a domestic dispute. I think of a kitchen knife. But even so, the whole point of Terry is a minimally intrusive search. You can pat down, you search the pockets, find nothing, and I'm not conceding that that search was allowable, by the way. In fact, you cannot go in the pockets unless you detect something from the exterior to suggest that there's a weapon inside, right? Correct. They had gone beyond the bounds just by going into the pockets. But in that second search, I mean, there's just simply no authority, particularly since the officer himself testified that the reason he was doing it was essentially investigation. So unless Your Honors have any further questions, I would ask that you reverse the trial court outright because without the evidence of the gun, the state can't prove their case. Thank you very much. Thank you. You'll be hearing from us directly. Thank you for your arguments today.